UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT FRANKFORT

| | |
|---|---|
| PAUL DUGLE, by and through his co-legal guardians Michael Dugle and Brenda Radcliff, )<br><br>Plaintiff )<br><br>and )<br><br>MEGAN DUGLE, individually, former legal guardian for Paul Dugle, )<br><br>Plaintiff )<br><br>and )<br><br>KENTUCKY ASSOCIATION OF COUNTIES WORKERS' COMPENSATION FUND and KENTUCKY ASSOCIATION OF COUNTIES ALL LINES FUND )<br><br>Intervening Plaintiffs )<br><br>v. )<br><br>NORFOLK SOUTHERN RAILWAY COMPANY )<br><br>Defendant ) | NO. 3:07-CV-0040-KKC |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THE RAILROAD'S MOTION IN LIMINE TO EXCLUDE ANY ARGUMENTS, OPINIONS OR SPECULATION THAT NORFOLK SOUTHERN RAILWAY COMPANY'S TRAIN AND LEAD LOCOMOTIVE WERE COASTING SILENTLY AS THE TRAIN APPROACHED THE PRIVATE RAILROAD GRADE CROSSING**

The Defendant, Norfolk Southern Railway Company (hereinafter "NSRC"), by Counsel, states as follows in support of Defendant's Motion in Limine to Exclude Any Arguments, Opinions or Speculation That Norfolk Southern Railway Company's Train and Lead Locomotive

were Coasting Silently as the Train Approached the Private Railroad Grade Crossing at Norfolk Southern Milepost 319.7W:

## RELEVANT FACTS

Plaintiff Paul Dugle (hereinafter "Plaintiff"), by counsel, has asserted that that the lead locomotive's throttle had been reduced to "coast" prior to the subject collision, "sharply reducing the engine's noise level, as measured in decibels." Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment, [DN 210], at p. 4, fn 4. Indeed, Plaintiff apparently will attempt to argue that the train's approach to the private railroad grade crossing at NS Milepost 319.7W was "quiet" or "silent", and thus not capable of being audibly detected.

However, there is absolutely no evidence to support Plaintiffs' expected characterizations of the train's approach as "quiet" or "silent". In fact, there is significant evidence to the contrary- evidence which establishes that the dynamic braking system in use on the three locomotives for almost one minute prior to the collision was "extremely loud". NSRC Central Division Road Foreman of Engines, Steve Driskell, testified unequivocally that the train was neither silent nor coasting, but was in fact "extremely loud" because the train's engineer had begun dynamic braking:

> A. … He was in dynamic braking.
> Q. And what is dynamic braking?
> A. It is a – our way of retarding or controlling our train speed without use of the air brakes, very similar to a automobile shift – downshifting, or probably more on the same lines as an airline pilot when he is touched down and he is trying to stop, reversing his engines. That's what you get. That's retardation of the locomotives only.
>
> * * *
>
> A. **And he had been in dynamic braking for approximately – right at 48 to 50 seconds, almost a minute.**
>
> * * *

2

> Q. What's the volume of the train engine in dynamic braking?
>
> A. The volume?
>
> Q. Uh-huh. Is it loud, is it quiet, is it --
>
> A. Oh, okay. The engine itself is not, but the grids, dynamic brake grids are loud.
>
> Q. The what are loud?
>
> A. Dynamic brake grids.
>
> Q. What are dynamic brake grids?
>
> A. **That's what actually takes the energy out and retards the train, and they get extremely loud**.

Driskell Depo. [DN 197], pp. 182-85 (emphasis added).

Retired NSRC System Road Foreman of Engines, Dennis Williams, described the function of the dynamic braking system as follows:

> Q. … First of all, would you tell the jury in essence what dynamic braking is?
>
> A. Dynamic braking is a -- an additional braking system that we equip our locomotives with that -- that will assist the locomotive engineer in controlling the speed of his train along with the air brakes that he uses on each car in a train.
>
> The difference being with the dynamic brake that it is, if you will, more of an electrical functioning brake that uses the traction motors that are located -- that are on our locomotives.
>
> The -- the current that's generated from those traction motors provides resistance that basically slows the train very much like -- if those that are familiar with it -- reversing the polarity of a generator, and in essence that's some -- basically how it works.
>
> It doesn't have anything to do with the -- with the pneumatic braking system or the air braking system. It's separate and apart from that.

Williams Depo. [DN 205], pp. 279-80. Mr. Williams further explained that the dynamic braking application is measured in amperage, which can typically range from zero amps (which represents no use of or traction from dynamic braking) to a maximum of approximately 800 amps for a locomotive of the size of the lead locomotive (NS 9069). Id. at p. 280. Mr. Williams

3

testified that the event recorder data covering the time frame of the subject incident showed that the amperage from the dynamic braking reached a level of approximately 500 amps in the seconds prior to the subject collision. Id. at p. 282.

Mr. Williams testified that the dynamic braking system produces loud noise that would be heard in the vicinity of the locomotive: "…you would hear the sound from -- from the diesel engine and also the sound from the -- the cooling fans dissipating the heat from the dynamic braking grids." Id. at pp. 282-83. Mr. Williams further explained that the use of the dynamic braking system creates a "loud somewhat of a whining -- whining noise." Id. at p. 286.

The attempts by Plaintiffs' counsel to characterize the approach of the freight train as "coasting silently" are not supported by the evidence in this case. Rather, the evidence adduced from the testimony of the witnesses and from the event recorder data shows that the crew began applying the dynamic braking system almost one minute before the collision, and the amperage from the dynamic braking system reached a level of approximately 500 in the seconds immediately preceding the collisions. This created an audible warning of the train's approach in the form of sounds being emitted from diesel engine, sounds from the cooling fans, and the loud whining sound from the friction of the metal wheels braking on the metal rails. These sounds were "extremely loud" - like a plane landing. There was nothing "silent" or "quiet" about the approach of the freight train on September 1, 2006.

Because there is no evidence to suggest that the train was "coasting silently" prior to the collision, any arguments, opinions or speculation that the freight train was "coasting", "silent", "quiet", or otherwise inaudible are inadmissible under the Federal Rules of Evidence (hereinafter "FRE").

NSRC would be substantially prejudiced if this Court were to allow the Plaintiffs to make such characterizations as they are purely speculative and, in fact, are in direct conflict with the undisputed testimony and the objective event recorder date. Therefore, and for the reasons explained more fully below, NSRC moves for this Court to exclude such arguments, opinions or speculation that the freight train was "coasting silently".

## LAW & ARGUMENT

### I. THE STANDARD FOR ADMISSION OF EVIDENCE UNDER RULES 401 AND 403 OF THE FEDERAL RULES OF EVIDENCE.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 401. Although the standard for relevance is a liberal one, even relevant evidence may be excluded "…if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." FRE 403; *See also Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009); citing *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006) (explaining that the standard for relevant evidence under Rule 401 is a liberal standard).

Even if a party can show relevancy under FRE 401, such evidence may still be excluded under FRE 403. A balancing test is required in which the trial judge must weigh the dangers set forth in FRE 403 of "'unfairness, confusion, and undue expenditure of time in the trial of collateral issues against the factors favoring admissibility.'" *Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100, 103 (6th Cir. 1989) quoting *McKinnon v. Skil Corp.*, 638 F.2d 270, 277 (1st Cir. 1981); *see also Rhodes v. Michelin Tire Corp. et al.*, 542 F.Supp. 60, 62 (E.D. Ky. 1982) (stating that relevant evidence may be excluded under FRE 403 if it is "confusing, unduly prejudicial, or

5

involve[s] undue inquiry into collateral matters"). "Unfair prejudice" means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting FRE 403, Advisory Committee Note).

## II. ARGUMENTS, OPINIONS OR SPECULATION THAT THE FREIGHT TRAIN AND THREE LOCOMOTIVES WERE "COASTING SILENTLY" OR "QUIETLY" IMMEDIATELY PRIOR TO THE COLLISION MUST BE EXCLUDED BECAUSE THEY ARE CONTRARY TO THE UNDISPUTED PHYSICAL EVIDENCE.

The evidence presented in this case through testimony of the witnesses coupled with the physical evidence and data from the lead locomotive event recorder establishes that the dynamic braking system was applied almost one minute prior to the collision. The dynamic breaking system created an "extremely loud" noise that could be heard in the vicinity of the locomotive.

FRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Intrinsic to FRE 401 is the existence of some actual evidence that will serve to assist the trier of fact. There is simply no evidence to support any arguments, opinions or speculation that the train was "coasting", "silent", "quiet", or otherwise inaudible immediately prior to the collision. Because such characterizations would be improper, unsupportable, and misleading to the jury, they must be barred.

## III. SPECULATIVE TESTIMONY THAT THE FREIGHT TRAIN MUST HAVE BEEN "COASTING SILENTLY" IS BARRED BY FRE 403.

Oral testimony or the other proposed proof that the train was "coasting", "silent", "quiet", or otherwise inaudible, is barred by the provisions of FRE 403. FRE 403 states that relevant evidence may be excluded if the probative value of such evidence is substantially outweighed by the danger of unfair prejudice. FRE 403. Plaintiff Paul Dugle testified that he is unable to

6

remember anything about the collision. Not a single person has ever testified that he or she witnessed the collision. To the extent that the Plaintiff would argue that the absence of any recall of the event is evidence that the train was "coasting silently," the probative value of such "evidence", if any, is substantially outweighed by the potential prejudice to NSRC.

## **CONCLUSION**

WHEREFORE, for the reasons stated above, NSRC respectfully requests that the Court grant the Railroad's Motion in Limine to exclude any arguments, opinions or speculation that the freight train was "coasting", "silent", "quiet", or otherwise inaudible as it approached the private railroad grade crossing 735613K at Norfolk Southern Railway Company Milepost 319.7W on September 1, 2006.

Respectfully Submitted,

/s/ Kathiejane Oehler  /s/
/s/ Justin Gilfert /s/
/s/ J.H. Mahaney /s/
Kathiejane Oehler, Esq.
Justin Gilfert, Esq.
J. H. Mahaney, Esq.
Huddleston Bolen LLP
9780 Ormsby Station Road, Suite 2800
Louisville, Kentucky  40223
Telephone: (502) 339-8188
**COUNSEL FOR DEFENDANT**
**NORFOLK SOUTHERN RAILWAY COMPANY**

and

/s/Crawford McGivaren /s/
Crawford McGivaren, Esq.
Steve Tucker, Esq.
Cabaniss, Johnston, Gardner,
Dumas & O'Neal
2001 Park Place North, Suite 700
Birmingham, AL 35203
(205) 716-5200
**COUNSEL FOR DEFENDANT**
**NORFOLK SOUTHERN RAILWAY COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of Norfolk Southern Railway Company's Motion in Limine to exclude any arguments, opinions or speculation that the freight train and lead locomotive was coasting silently as the train approached the private railroad grade crossing at Norfolk Southern Railway Company Milepost 319.7W, were served via the Court's Electronic Filing System (ECF) this 8th day of June, 2010 on:

Glenn A. Cohen, Esq.
Paul J. Hershberg, Esq.
Ted Walton, Esq.
Robyn Smith, Esq.
Seiller Waterman, LLC
Meidinger Tower – 22nd Floor
462 South Fourth Street
Louisville, KY  40202
(502) 584-7400
**COUNSEL FOR PLAINTIFFS PAUL DUGLE AND MEGAN DUGLE**


Linda H. Clare, Esq.
GIBSON & SHARPS, PSC
9390 Bunsen Parkway
P.O. Box 32080
Louisville, Kentucky 40232
Telephone: (502) 214-8960
**COUNSEL FOR THE INTERVENING PLAINTIFFS**
**THE KENTUCKY ASSOCIATION OF COUNTIES WORKERS'**
**COMPENSATION FUND AND**
**THE KENTUCKY ASSOCIATION OF COUNTIES ALL LINES FUND**



　　　　　　　　　　/s/   Kathiejane Oehler   /s/
　　　　　　　　　　**COUNSEL FOR DEFENDANT**
　　　　　　　　　　**NORFOLK SOUTHERN RAILWAY COMPANY**