UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 07-40

PAUL DUGLE, *by and through his co-legal guardians Michael Dugle and Brenda Radcliff,* and MEGAN DUGLE, *in her individual capacity,* PLAINTIFFS,

KENTUCKY ASSOCIATION OF COUNTIES
WORKERS COMPENSATION FUND, INTERVENOR PLAINTIFF,

v. **OPINION AND ORDER**

NORFOLK SOUTHERN RAILWAY COMPANY, DEFENDANT.

\* \* \* \* \* \* \* \* \*

This matter is before the Court on various motions in limine filed by the parties. The motions and the Court's rulings are set forth below.

**DE 305    Plaintiffs' Miscellaneous Motions in Limine.**

This motion is GRANTED in part and DENIED in part as premature. This motion appears to assert 14 form objections that are not specifically relevant to this action and the meaning of some of the objections to this action is not clear. At this time, the Court is able to issue the following rulings:

- The motion is GRANTED as to the Plaintiffs' request that the Court order counsel to inform any and all witnesses of the court orders relevant to each witness's testimony and the meaning of such orders and counsel for both parties are SO ORDERED.
- The motion is GRANTED as to the Plaintiffs' request that the Court prohibit Norfolk from offering any evidence in its case in chief that Paul Dugle has received or is eligible to receive benefits from a collateral source. However, Norfolk may reassert this issue by approaching the bench for a ruling if such evidence becomes admissible for impeachment or rebuttal purposes.
- The motion is GRANTED as to the Plaintiffs' request that the Court exclude any

evidence of the income or financial status of the Plaintiffs' treating physicians to the extent that such witnesses are not testifying as expert witnesses.

- The motion is GRANTED as to the Plaintiffs' request that the Court prohibit any evidence attacking the American tort system or Plaintiffs' attorneys.
- The motion is GRANTED as to the Plaintiffs' request that the Court prohibit any evidence or argument that any recovery by the Plaintiffs would or would not be subject to taxation.
- The motion is GRANTED as to the Plaintiffs' request that the Court exclude all evidence and arguments regarding the effect of a claim, suit, or judgment upon insurance rates, premiums or charges generally; and that damages awards may drive up the price of products, put manufacturers out of business or cause jobs to be lost.
- The motion is GRANTED as to the Plaintiffs' request that the Court exclude all evidence and arguments regarding the probative testimony of any witness available to either party who that party did not call to testify.
- All other requests made in this motion are DENIED as premature. Plaintiffs may reassert these portions of the motion as appropriate at trial.

**DE 308        Defendant's Motion to Exclude, in Part, the Kentucky State Police Investigation Report Pertaining to the Collision.**

Defendant moves to exclude certain portions of the report by Kentucky State Police Officer Trevor Harris after the collision. This motion is GRANTED in part and DENIED in part as premature. The specific evidence that the Defendant moves to exclude and the Court's ruling with respect to each is set foth below.

- Witness Interview Sheets containing statements by neighbors that the Defendants sounded the horn on approach to the crossing on dates prior to the collision.

In their response, the Plaintiffs do not appear to object to the motion to exclude these statements and indicate that they will be calling these witnesses to testify. Accordingly, this portion of the motion is GRANTED.

However, in its memorandum, the Defendant indicates that these witnesses should also be excluded from testifying on the basis that their testimony is speculative, irrelevant and prejudicial.

Because the motion does not explicitly ask the Court to exclude these witnesses from testifying, the Court declines to address any such argument in the memorandum. However, the Court does note that it has *not* found, as the Defendant asserts, that the Defendant "was under no legal duty to sound the horn of the train on approach to this private crossing." (DE 308 at 18). Rather than rehashing what the Court *did* find in its opinion on the Defendant's Motion for Summary Judgment, the Court directs the Defendant to reread it.

- The report's reference to statements made by Defendant's employees *except for impeachment purposes* (emphasis added).

Defendant argues these statements are inadmissible hearsay. The Plaintiffs argue that the statements made by the train crew on the day of the collision are inconsistent with their later sworn deposition testimony and are admissible for impeachment purposes and as admissions. In a footnote in its motion, the Defendant also states that the Plaintiffs should not be precluded from using the statements of its employees for impeachment purposes. (DE 308 at 13 n.6). Thus, both parties appear to agree that the statements are admissible for impeachment purposes. As to whether the statements are admissible as "admissions," no party has made clear which statements are specifically at issue or why or why not the statements should be deemed "admissions." Thus, the Court is unable to rule that the statements are admissible only for impeachment purposes and not as admissions. This portion of the motion is DENIED as premature. The Defendant may reassert this issue at trial as appropriate.

- Statements by the investigating officer that trains sounded their horn on approach to the grade crossing after the collision and the videotape taken by the officer of a train sounding its horns at the crossing after the accident.

This portion of the motion is DENIED as premature. The Defendant argues that these

3

statements and the videotape regarding events occurring after the collision at issue are evidence of "subsequent remedial measures" and, thus, should be excluded under Federal Rule of Evidence 407. That rule provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. *This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.*

Fed. R. Evid. 407 (emphasis added).

The Plaintiffs argue that the statements by Harris and the video depicting subsequent sounding of the horn are not evidence of "subsequent remedial measures" because the Defendant's managers have consistently denied that the Defendant sounded the horn after the collision. The Plaintiffs argue that, having denied the existence of any subsequent measures at all, the Defendant cannot now argue that any evidence should be excluded as a "subsequent remedial measure." For this reason, the Defendant also argues the evidence regarding subsequent sounding of the horn is admissible for impeachment purposes because the Defendant's managers have testified that the Defendant has never sounded the horn at this crossing.

The Plaintiffs also argue that the subsequent sounding of the horn is not a "subsequent remedial measure" because the Defendant has argued that sounding the horn is not a measure that "if taken previously, would have made the injury or harm less likely to occur."

Evidence of subsequent remedial measures cannot admitted for impeachment purposes simply to rebut the Defendant's contention that it exercised due care. Accordingly, it is clear that

evidence of post-collision sounding of the horn cannot be admitted simply to impeach any evidence offered by the Defendant that it exercised due care in approaching the crossing.

However, this case is different than a product liability case in that, if the jury should determine that the crossing is ultrahazardous, they will specifically consider whether the train crew should have sounded the horn on the day of the collision. There will certainly be evidence presented that the train crew did not sound the horn. It appears that there will be evidence that neighbors heard the train crew sound the horn on prior occasions. It also appears that the Defendants will themselves seek to introduce evidence that sounding the horn at the whistleboard would not have lessened the likelihood of the accident.

Thus, this is not like a products liability case in which the subsequent remedial measure would never be considered by the jury if not for the admission of evidence of the measure. Whether or not the railroad should have sounded the horn – the precise remedial measure at issue – is a primary issue in this case and there will be much evidence presented regarding the sounding of the horn, the failure to do so, and the effect. Some of this evidence of the remedial measure at issue will be presented by the Defendant itself.

The Court is unable to render a ruling on this portion of the motion until it appears in complete context. However, should the Defendant introduce evidence that sounding the horn on approach to the crossing would not have avoided the collision, then the Court will be inclined to permit Plaintiffs to introduce evidence that the train crew sounded the horn after the collision. In such a case, the Defendants would be denying that sounding the horn was "remedial" at all.

Likewise, if Defendant should seek to introduce evidence that sounding the horn at the whistleboard would not have lessened the likelihood of the accident, the Court would be inclined

5

to permit Plaintiffs to introduce evidence that the Defendant did sound the horn at the whistleboard after the collision and why. In such a case, the Defendant would itself be offering evidence of the subsequent remedial measure and its effect .

**In any event, the Plaintiffs should approach the bench and offer a foundation before introducing evidence that the train crew sounded the horn after the collision.**

- the US DOT AAR Grade Crossing Inventory Forms as well as all other information that falls under 23 USC § 409.

This portion of the motion is GRANTED in accordance with this Court's orders of November 2, 2009 (DE 154) and May 13, 2010 (DE 244).

**DE 313    Plaintiffs' Motion to Exclude Testimony of Recently Identified Fact Witnesses.**

This motion is DENIED.

The Plaintiffs move the Court to preclude the Defendant from calling at the trial of this matter any witnesses whose identity the Defendant first disclosed on October 29, 2009 or April 30, 2010.  The Plaintiffs argue that these disclosures violated Federal Rule 26 which requires that the parties disclose early in the litigation each individual likely to have discoverable information and also requires timely supplements to the disclosures.

As to the five witnesses first disclosed on April 30, 2010, the Plaintiffs argue these were untimely because they were made nearly sixth months after the November 16, 2009 close of discovery in this case.  The Plaintiffs state that it appears from the disclosures that these witnesses will testify as to the cost of assisted living homes.

The Defendant asserts that these witnesses are offered to impeach the testimony of the

Plaintiffs' expert Dr. Robert Voogt that Paul Dugle must travel to Virginia Beach, Virginia to receive appropriate assisted living care. It explains that it was unable to take Dr. Voogt's deposition until December 21, 2009 and then conducted a detailed investigation to identify five witnesses from assisted living care facilities in Shelbyville, Lexington and Louisville who will provide testimony regarding their facilities. The Court will permit these witnesses to testify to rebut or impeach the testimony of Dr. Voogt

As to the 23 witnesses first disclosed on October 29, 2009, the Plaintiffs recognize that this disclosure occurred before the close of discovery but argues it was impracticable for it to depose 20 or so witnesses in the two-week time frame.

As to these witnesses, the Plaintiffs provide no reason why they did not ask for an extension of time to complete discovery after the disclosure of the witnesses. Nor do the Plaintiffs provide any reason why they did not object to these disclosures at an earlier time so that discovery could be reopened if necessary to conduct depositions. In fact, the parties worked together to complete other depositions as necessary after the close of discovery. The Court cannot find that these disclosures made prior to the discovery cutoff are untimely.

**DE 314    Plaintiffs' Motion in Limine to Exclude 1887 Deed.**

This motion is DENIED.

This motion was apparently miscaptioned by the Plaintiffs as a motion to exclude late-disclosed witnesses. With this motion, the Plaintiffs actually move to exclude an 1887 Deed and, thus, the court will refer to the motion as such. The Plaintiffs argue that Norfolk tendered and disclosed the deed for the first time in Norfolk Southern's December 18, 2009 Supplemental

Response to the Plaintiffs' request for documents. The deed apparently provides evidence that Norfolk Southern has a 33-foot right of way from the center of the track.

The Plaintiff argues the deed should be excluded because it was disclosed after discovery in this matter was closed on November 16, 2009 and after the November 2, 2009 deadline for supplementing disclosures. The Plaintiffs also argue that Norfolk Southern claimed throughout discovery of this matter that no deed existed and that it acquired its right of way through adverse possession. The Plaintiffs also complain that they have had no opportunity to take discovery regarding the authenticity of the deed.

Norfolk argues in response that, it conducted a diligent deed search but did not have the 1887 deed before December 11, 2009. It argues that it first learned of the deed's existence on November 16, 2009 when land surveyor Charles Moody produced his file to Norfolk in response to Norfolk's subpoena duces tecum. Norfolk states it gave the Plaintiff Moody's notes referencing the 1887 deed along with all the other materials produced by Moody. Norfolk states that another surveyor, Jeffrey Meyer, subsequently obtained the deed and provided it, on December 11, 2009, to Norfolk's counsel. Norfolk provided it to the Plaintiffs seven days later.

Norfolk's failure to produce the deed prior to the discovery deadline was substantially justified because Norfolk was clearly unaware of its existence until November 16, 2009 and did not receive a copy of it until December 11, 2009. Further, the late disclosure was harmless. Plaintiffs have identified no prejudice they will suffer from the production of the deed. Norfolk continues to argue that its right of way at the crossing was obtained through adverse possession, not through the deed. Norfolk states that the deed does not actually cover the property upon which the crossing at issue sits.

**DE 319** **Defendant's Motion to Exclude the December 31, 1927 Val Map and All Evidence that the Northern Boundary of Norfolk Souther's Right of Way Easement Specifically in the Northwest Quadrant of the Private Crossing was More than 33 Feet from the Center of the Railroad's Mainline.**

This Motion is DENIED.

In its Motion, the Defendant asserts that an issue in this litigation is the boundary of its easement in the area of the crossing, specifically the exact measurement of the easement's boundary in the northwest quadrant of the private crossing. The Defendant argues that the Plaintiffs seek to introduce the December 31, 1927 Valuation Map ("Val Map") and testimony by its expert Larry Tingle as evidence that the northern boundary of the northwest quadrant extended 50 feet from the main line's center line. The Defendant argues that this evidence in inaccurate and should be excluded.

Norfolk argues that its customary usage of the right of way, general customs and usages in the railroad industry, testimony of its representatives, surveys conducted "in and around" the crossing, survey markers "in and around" the area, and county land records establish that the northern boundary is 33 feet from the center line.

Norfolk states there are no deeds establishing its right of way so it must have obtained its right of way by adverse possession and prescription. It argues that there is no evidence it used any property north of the 33-foot marker. Thus, it could not have acquired any land north of the 33-foot marker by adverse possession.

Norfolk argues the Val Map was created by its predecessor and was never intended to denote legal boundary measurements. It further argues the Val Map is inaccurate. Finally, it argues that, even if it were accurate, the Val Map establishes boundaries from 83 years ago and

that Norfolk would have lost any use of the property north of the current 33 foot boundary long ago.

The Plaintiffs point out that Norfolk's 30(b)(6) witness on this subject, James Stump, testified in his deposition that the Val Map would show Norfolk's right of way and that there is no document other than the Val Map that would show Norfolk's right of way. The Court notes, however, that Stump also testified that Norfolk does not use the Val Map to keep track of its rights-of-way and also testified that this Val Map was inaccurate. Norfolk points out that its retained surveyor Jeffrey Meyer testified that a Val Map is " not a boundary survey nor was it prepared by licensed land surveyors." Norfolk states that Meyer testified that deeds and surveys show boundary lines.

Meyer also testified that, historically, railroad rights of way measure 66 feet – 33 feet on each side of the center line.

The Plaintiffs argue that the Court should at least permit the Val Map to be used as evidence of the actual property boundaries.

Norfolk's motion to exclude the Val-Map and other evidence of the property boundaries appears to rest on the idea that Norfolk has conclusively established the property boundaries. Thus, any contradictory evidence should be excluded as inaccurate.

The problem, however, is that, while Norfolk points to evidence of the boundaries of the right-of-way it claims to have acquired by adverse possession, the Val Map and Tingle's testimony are also evidence of the property boundaries. The Court notes that valuation maps have been accepted by courts as evidence of boundary lines and rights of way. *Downey Farms Development Corp. v. Town of Cornwall*, 20 Misc. 3d 566, 574 (N.Y. Sup. 2008); *Southeastern*

*Pennsylvania Transp. Authority v. CSX Trans., Inc.*, 2005 WL 3597715 (E.D. Pa. 2005); *Alameda Corridor Transp. Authority v. Stewart Title Guar. Co.*, 119 Fed. Appx. 111 (9th Cir. 2004); *Illig v. United States*, 58 Fed. Cl. 619 (Fed. Cl. 2003); *Brown v. Alabama Great Southern R. Co.*, 544 So.2d 926 (Ala. 1989).

The fact that Norfolk will produce evidence that contradicts the Val Map and Tingle's testimony does not require their exclusion. There is no deed covering the property at issue. Norfolk has evidence of the boundary lines of its right-of-way but the Plaintiffs have contradictory evidence in the Val Map and Tingle's testimony. To the extent that the Plaintiffs' evidence is inaccurate or weak, Norfolk may demonstrate that on cross examination.

WHEREFORE, in summary and for reasons stated above:

**DE 305**     **Plaintiffs' Miscellaneous Motions in Limine are GRANTED in part and DENIED in part as premature.**

**DE 308**     **Defendant's Motion to Exclude, in Part, the Kentucky State Police Investigation Report is GRANTED in part and DENIED in part as premature.**

**DE 313**     **Plaintiffs' Motion to Exclude Testimony of Recently Identified Fact Witnesses is DENIED.**

**DE 314**     **Plaintiffs' Motion in Limine to Exclude 1887 Deed is DENIED.**

**DE 319**     **Defendant's Motion to Exclude the December 31, 1927 Val Map is DENIED.**

Dated this 7th day of July, 2010.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge