UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 07-40

PAUL DUGLE, *by and through his co-legal guardians Michael Dugle and Brenda Radcliff,* and MEGAN DUGLE, *in her individual capacity,*           PLAINTIFFS,

KENTUCKY ASSOCIATION OF COUNTIES
WORKERS COMPENSATION FUND,           INTERVENOR PLAINTIFF,

v.           **OPINION AND ORDER**

NORFOLK SOUTHERN RAILWAY COMPANY,           DEFENDANT.

\* \* \* \* \* \* \* \* \*

This matter is before the Court on various motions by the parties including the Plaintiffs' Motion for Certification pursuant to Kentucky Civil Rule 76.37 (DE 440) and the Motion to Alter, Amend, or Vacate this Court's Opinion and Order dated July 23, 2010 (DE 449). For the following reasons, the Court will DENY both motions.

    **I.**     **Plaintiffs' Motion to Alter, Amend, or Vacate this Court's Opinion and Order dated July 23, 2010.**

The pertinent facts were recited by this Court in its prior summary judgment ruling (DE 286). No party has disputed any of those factual findings. To summarize, on September 1, 2006, Paul Dugle, who was a Shelby County Deputy Sheriff at the time, was driving a 2006 Crown Victoria police cruiser across a railroad crossing in Shelby County when a train owned by Norfolk hit the cruiser, leaving him permanently impaired. (DE 1, State Court Complaint; DE 176, Ex. 1, KSP Report). There is no dispute that the Norfolk train crew did not sound the horn on approach to the crossing. The Plaintiffs assert a negligence claim against Norfolk.

In its initial ruling on Norfolk's Motion for Partial Summary Judgment, the Court held that the crossing at issue was a private crossing. (DE 286). Thus, under Kentucky law, Norfolk had very limited duties and no duty to sound the horn upon approach to the crossing unless the crossing was determined to be "ultrahazardous." In its initial ruling on summary judgment, the Court determined that the jury should decide whether the crossing was ultrahazardous and whether the collision could be attributed at least partly to Norfolk's failure to warn Dugle of an approaching train, namely, by sounding the horn.

Both parties moved the Court to reconsider its summary judgment opinion and the Court conducted a hearing on the motions. As noted in its opinion on reconsideration, the Court was troubled by its summary judgment opinion in light of Kentucky court rulings in similar cases, finding for the railroad as a matter of law. The only case cited by either party that permitted a negligence action against a railroad at a private crossing to be submitted to the jury is *Louisville & N.R. Co. v. Quisenberry*, 338 S.W.409 (Ky. 1960).

After the hearing and after reviewing Kentucky case law and the parties' briefs, for the reasons stated in the opinion on reconsideration (DE 441), the Court determined that, as a matter of law, the crossing was not ultrahazardous and, thus, Norfolk was not required to take any further precautions to warn travelers of a train's approach than already existed at the crossing.

The Plaintiffs now move the Court to Alter, Amend or Vacate its opinion on reconsideration. The Plaintiffs argue that the Court's reconsideration opinion errs in two ways. First, the Plaintiffs argue, the opinion errs by "imposing an unprecedented duty upon motorists to stop at a passive crossbucks." (DE 449 at 2). Second, the Plaintiffs argue, the opinion errs because "Kentucky courts have replaced the entire body of law" upon which the opinion is based. (DE 449 at 2).

As to the first argument, the Court's opinion does not impose an absolute duty upon motorists to stop at a crossbuck. In fact, the opinion specifically recognizes "there is no absolute duty to stop at a crossbuck in Kentucky." (DE 441 at 7). The significance of the crossbuck is that it provides a visual warning to drivers at the crossing that a train may be approaching. In *Quisenberry* – the only private-crossing case cited by the Plaintiffs that was actually submitted to a jury – there was no crossbuck or any visual warning of a train's possible approach at all.

The presence of the crossbuck is not "immaterial" as the Plaintiffs assert. (DE 449 at 23). In determining whether there was sufficient evidence that this particular crossing is ultrahazardous, the Court considered the fact that a driver at this crossing does have a visual warning of a train's possible approach. The Court further considered the undisputed Kentucky State Police report's finding that, if Deputy Dugle had stopped his cruiser with the front of it near the crossbuck, he could have seen for more than 400 feet. This would have permitted him to avoid the accident.

The Plaintiffs assert that the 400-foot sight distance is irrelevant to the Court's determination as to whether the crossing was ultrazardous. The Plaintiffs argue Dugle never had the benefit of the 400-foot sight distance because he did not stop at the crossing to look for an oncoming train. A crossbuck does not require a driver to stop. But, at this particular crossing, according to the Plaintiffs, Deputy Dugle's view in one direction was almost completely obscured. In such a situation, the only reasonable action for him to take was to approach the crossbuck prepared to stop to determine if a train was approaching. Had he done so, he could have seen for 400 feet, and there is no dispute he could have avoided this accident.

The Plaintiffs' second argument in their current motion is that this Court erred in applying Kentucky case law establishing that railroads owe minimum duties at private crossings. The Plaintiffs

3

argue that this entire body of law is no longer viable given the Kentucky Supreme Court's adoption of comparative fault in *Hilen v. Hays*, 673 S.W. 2d 713, 720 (Ky. 1984) and since its decision in *Perry v. Williamson*, 824 S.W.2d 869 (Ky. 1992) holding that "[t]he duty owed by the person in possession of land to others whose presence might reasonably be anticipated, is the duty to exercise reasonable care in the circumstances." *Id*. at 875.

Plaintiffs state they have made this argument "persistently" and "throughout this litigation." In fact, Plaintiffs have never argued that *Quisenberry* and the other private-crossing cases are no longer good law in Kentucky. In their 61-page response (DE 210) to Norfolk's Motion for Summary Judgment, the Plaintiffs did briefly assert that this law *may* change *in the future*. Specifically, they noted that the Kentucky Supreme Court granted discretionary review in *Calhoun v. CSX Transp., Inc.*, No. 2007-CA-001651-MR, 2009 WL 152970 (Ky. App. Jan. 23, 2009) and, thus, would soon be addressing the duties owed at private grade crossings for the first time since *Perry* and *Hilen. (*DE 210 at 28-29). The Plaintiffs stated it was "no stretch to imagine" that the Kentucky Supreme Court "may" change the law on private railroad crossings.

At the pretrial hearing the Court asked the parties if they saw any benefit to awaiting the *Calhoun* decision before proceeding to the trial of this matter. Neither party wanted to wait. At the hearing on the motions to reconsider, the Court itself raised the issue of whether it was significant for this case that many of the prior Kentucky decisions finding for the railroad as a matter of law were decided under a theory of contributory negligence. The Plaintiffs responded that any change prompted by Kentucky's adoption of comparative fault "doesn't matter" in this case (DE 432, at 43) and went on to continue to argue that *Quisenberry* is "[d]irectly on point." (DE 432, at 45). Even in their current motion, the Plaintiffs have continued to argue that any change in Kentucky law "does not

4

matter" in this action. (DE 457 at 2).

*Calhoun* may well result in a change of Kentucky law in the future. Or it may not. The point is, this Court must decide this case based on Kentucky law as it stands now through *Quisenberry*, *Calhoun*, *Whalen v. Norfolk Southern Corp.*, No. 2008-CA-000296-MR, 2010 WL 1404409 (Ky. App. April 9, 2010) and other controlling precedent.

For all these reasons, the Plaintiffs' Motion to Alter, Amend, or Vacate this Court's Opinion and Order dated July 23, 2010 will be denied.

## II.  Plaintiffs' Motion for Certification.

A few days after the hearing on the motions to reconsider, the Plaintiffs filed a motion asking this Court, pursuant to Kentucky Rule of Civil Procedure 76.37, to certify to the Kentucky Supreme Court broadly "any question concerning the duty of railroads at private crossings." (DE 440 at 1).

Certification is proper only if "there is no controlling precedent in the decisions of the Supreme Court and the Court of Appeals" of Kentucky and if the questions sought to be certified "may be determinative" of the pending action. Ky. R. Civ. P. 76.37(1). In their reply on that motion, the Plaintiffs clarify the questions they seek to have certified. They present four questions.

The first deals with whether there is a distinction under Kentucky law between the duties owed by a railroad at a private crossing and those owed at public crossings. As discussed above, there is controlling precedent on this issue. Thus, this question is not proper for certification.

The second, third, and fourth proposed questions are not proper for certification because they seek answers that would not be determinative of this matter. The second proposed question asks whether a crossbuck renders a crossing not unusually dangerous as a matter of law. Similarly, the third proposed question asks whether a railroad fully discharges its duty of care by placing a

5

crossbuck at an unusually dangerous crossing. This Court's opinion on reconsideration expressly stated "[o]f course, the simple existence of a crossbuck does not necessarily mean a crossing is not ultrahazardous. . ." (DE 441 at 6).

The fourth proposed question asks whether KRS § 189.330(5) applies at private crossings. The Court has not ruled that KRS § 189.330(5) applies at private crossings. The Court has ruled, in accordance with clear controlling precedent and for obvious reasons, that a driver has a duty to "yield" to a train. As to what the duty to yield means, the Court determined that KRS § 189.330(5) provided an adequate definition. No party offered any other definition of that duty.[1]

Accordingly, the Plaintiffs' Motion for Certification Pursuant to Kentucky Civil Rule 76.37 will be denied.

### III. Conclusion.

For all these reasons, the Court hereby ORDERS as follows:

1) the Plaintiffs' Motion for Certification pursuant to Kentucky Civil Rule 76.37 (DE 440) and the Plaintiffs' Motion to Alter, Amend, or Vacate this Court's Opinion and Order dated July 23, 2010 (DE 449) are DENIED;

2) Norfolk's Motion for Entry of Final Judgment (DE 452) is GRANTED and a judgment will be entered contemporaneously with this Opinion;

3) the Plaintiffs' unopposed Motion for Leave to Exceed Page Limit (DE 450) is GRANTED and the Clerk of the Court is DIRECTED to file the Tendered Reply Brief (DE 451) in the record and;

---

[1] In a footnote, the Plaintiffs suggest four additional questions for certification. There is controlling precedent governing each of these questions and, thus, the Court declines to certify them.

4) Norfolk's unopposed Motion for Leave to File Surreply (DE 458) is GRANTED and the Clerk of the Court is DIRECTED to file the tendered Surreply in the record.

Dated this 15th day of November, 2010.

Signed By:
*Karen K. Caldwell*
United States District Judge